OPINION
William Welch, the five-year-old son of defendant-appellant, Angel M. Torr, died in a fire at the family home on July 5, 2000. Angel M. Torr was charged with a two count offense as a result of his death. Firstly, she was charged with involuntary manslaughter, in violation of R.C.2903.04, and secondly she was charged with endangering her child, in violation of R.C. 2919.22(A), a felony of the third degree.
Appellant waived her right to trial by jury and, following a trial to the court, she was found guilty of the felony endangering child offense and not guilty of involuntary manslaughter. The trial court sentenced her to a three-year term of imprisonment.
Appellant appeals, asserting the following assignments of error:
 FIRST ASSIGNMENT OF ERROR: Focus on irrelevant matters not bearing on proof of the elements of the offenses charged constituted prosecutorial misconduct requiring reversal.
 SECOND ASSIGNMENT OF ERROR: The Court erroneously overruled an objection to irrelevant testimony concerning appellant's use of funds collected before her son's funeral.
 THIRD ASSIGNMENT OF ERROR: Appellant's conviction was not supported by sufficient evidence.
 FOURTH ASSIGNMENT OF ERROR: Appellant's conviction was against the manifest weight of the evidence.
 FIFTH ASSIGNMENT OF ERROR: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
First, we combine the third, fourth and fifth assignments of error for discussion as they are interrelated.
Appellant asks us to reverse her conviction on the grounds that it was not supported by sufficient evidence as a matter of law; that the trial court's judgment was against the manifest weight of the evidence; and that the court erred in overruling her motions for acquittal at the conclusion of the state's evidence and at the close of all of the evidence.
In order to reverse a conviction because of insufficient evidence, an appellate court, after reviewing the evidence in a light most favorable to the prosecution must determine, as a matter of law, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The appellate court may not resolve evidentiary conflicts in the defendant's favor nor substitute its assessment of the credibility of the witnesses for that of the trier of fact.
In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
The standard for reviewing the denial of a motion for judgment of acquittal and the test for determining the sufficiency of the evidence are the same. State v. Fisher (Oct. 17, 2000), Franklin App. No. 99AP-1497, unreported.
In considering a manifest weight argument, a reviewing court is required to engage in a limited weighing of the evidence to determine whether there is enough competent credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Issues of witness credibility and a weight to attach to specific testimony still remain primarily within the province of the trier of fact, whose opportunity to make those assessments is superior to that of the reviewing court. State v. DeHass (1967), 10 Ohio St.2d 230, 231. Nevertheless, the appellate court must review the entire record and, after according deference to the role of the trier of fact, the reviewing court must weigh the evidence and all reasonable inferences and consider the credibility of witnesses to determine whether the trier of fact clearly lost its way creating a manifest miscarriage of justice so that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.
Keeping these tests in mind, we now review the facts that are pertinent to the determinations which we must make.
First we will review the circumstances of the fire and the resulting death. William Welch, age five, lived with appellant, Angel Torr, in a two-story townhouse apartment located near the end of a dead-end street among a group of duplexes. William's twelve-year-old aunt, Nicole Torr, and her mother's boyfriend, Zach Trout, stayed in the home with appellant and her son on the night before the fire and remained there the following day. Nicole Torr is the younger half sister of Angel Torr and was employed as a live-in babysitter for William during her summer vacation from school while appellant worked long and sometimes irregular hours at a combination laundry and bar.
On the afternoon of July 5, 2000, while William played outside, the other three occupants of the apartment were inside watching television. All three smoked cigarettes and used one or more plastic lighters. Around 4:00 p.m. Angel and Zach decided to go to the grocery store to buy food for the evening meal. Before leaving, they testified that they picked up the smoking materials. Appellant gave Nicole a note to take across the street to her grandmother's house and told Nicole that she would locate William and instruct him to come home to check in with her. Nicole walked across the street as Angel and her boyfriend were leaving. They drove up the street and saw William with a friend at the church parking lot. Appellant told her son to check in with Nicole and looked back to make sure he headed home as she and her boyfriend continued to the store. William arrived home, while Nicole was still across the street at the home of her grandmother. After delivering the note from appellant, Nicole borrowed her grandmother's telephone to call her own mother. During her conversation, the grandmother heard William calling his aunt's name. They went outside and began crossing the street to find out what the boy needed. Nicole noticed smoke emerging from the upstairs front window of the townhouse. The grandmother instructed Nicole to call 9-1-1 and to get a fire extinguisher from her home. As they attempted to rescue William from the burning unit, she said the fire in the living room was like a bonfire going clear to the ceiling. She went inside the front door and tried to go upstairs but the stairway was on fire and the smoke was too thick. Flames were coming from the area of a love seat in the living room near the stairway. She went outside and yelled at William to break the front bedroom window but the last she heard him say was "grandma I can't do it, I can't do it."
Fire personnel from both Westerville and Columbus arrived soon thereafter. At trial, various firemen described the intensity of the fire, their efforts to extinguish it and their futile attempts to save the boy trapped inside. William's body was found near the front bedroom window. The bathroom sink faucet was on with water running over three or four plastic bottles.
The state fire inspector, Harry Barber, who was qualified as an expert, testified concerning his examination of the fire scene and analysis of the fire. Barber explained in detail his reasons for concluding that the fire started on the love seat beneath the stairway. This was the seat where one or more of the three people that were smoking in the apartment had been sitting prior to leaving for the store. Barber was of the opinion that the fire was of human origin as opposed to being mechanical or electrical in nature. All the evidence indicated that the fire had started in the love seat. He ruled out the electrical outlet in that area as being the cause of the fire. He also was of the opinion that the fire had not commenced due to a smoldering cigarette or from a cigarette butt that was on the carpet near the love seat. The cigarette had not been consumed completely by the fire, and Barber stated that it takes a much longer time for a fire originating from a smoldering cigarette butt to gain momentum, opining that the time was simply not sufficient for that to have taken place. He felt that the fire had been started by something more in the nature of a cigarette lighter or a pyrotechnic device, like a sparkler or fireworks. There was no evidence of a cigarette lighter or pyrotechnic device in the vicinity of the love seat. There was no search in the upstairs part of the house. The fire inspector identified the general cause of the fire within a reasonable degree of scientific certainty, but he was unable to identify the exact cause of the fire. He did state that the fire was definitely of human origin from a device such as has been previously described. The most reasonable inference from Barber's testimony is that the fire was started by a device that accelerated rapidly after appellant, Trout and Nicole exited the premises. The logical explanation given the force of his testimony is that the victim started the fire. This inference is reinforced by evidence of William's history of curiosity or fascination with fire and his past fire starting behavior.
There was testimony that William had been involved in as many as nine incidents involving setting fires from the summer 1999 until April 2000. The most serious of these incidents was a chair fire during March 2000 that caused significant damage in an upstairs bedroom. Immediately following the March chair fire, the Westerville Fire Department public education officer Douglas Arter, who oversees the department's juvenile fire starter program, contacted appellant to advise of the potential benefits to William and her from participating in the program. During the initial meeting, William admitted to the officer that he had accidentally started the chair fire while playing with a cigarette lighter. A few days later, appellant and her son met with Arter again so that the officer could assess the level of William's curiosity with fire. The officer concluded that the boy had a moderate curiosity based upon the recent incident and two previous occurrences divulged by appellant during the evaluation interview. After concluding that William would benefit from participating in the voluntary educational program, he advised appellant of his conclusion and strongly recommended that they participate in the program.
Several other witnesses confirmed that appellant had been made aware of William's involvement with fires or lighters and some of the testimony indicated that the problem was serious and continuing.
The first instructional session was scheduled with Arter but appellant and her son did not attend. When contacted, appellant explained that William had been at the home of his paternal grandfather. She claimed to have left a voice mail message to that effect for the officer but he did not recall receiving the message. Arter said that he was the sole person giving this instruction and that neither appellant nor her son attended any of the educational sessions. He stated that during a follow-up telephone conversation with appellant, he told her that, unless there was intervention, the fire setting behavior would probably continue. Appellant had stated that she would bring her son to a session or sessions but she did not attend when she found out that she was required to attend as well.
Appellant's response in lieu of the offered instruction was to discipline her son, primarily by scolding him and by withholding privileges. Appellant and other relatives talked to the boy about the dangers of fire and verbally discouraged him from playing with lighters, matches or stoves.
One of the circumstances observed at the fire scene was that water was running in the upstairs bathroom over several plastic containers giving rise to an inference that the victim may have attempted to fill containers to extinguish the fire himself to avoid punishment.
The fire inspector had stated that with the fire starting in the lower level it would accelerate rapidly, closing off a downstairs means of exiting the premises.
In summary, the evidence was sufficient to find beyond a reasonable doubt that the fire had been commenced by William using some sort of incendiary device such as a cigarette lighter. There was no evidence as to how William obtained the cigarette lighter if that were the object used. The three persons who left the duplex shortly before William arrived home testified that they removed all cigarette lighters. Consequently, there was no proof that appellant negligently left a cigarette lighter or other incendiary device to which William could have access to start a fire.
The state also presented evidence concerning the quality of supervision provided by and the babysitting abilities of William's twelve-year-old aunt, Nicole Torr. She completed the seventh grade in June 2000 and was hired to watch her nephew during the summer months while appellant worked or was otherwise away from home. In short, Nicole was a live-in babysitter who often had the child for substantial periods of time that may have been as much as twelve to sixteen hours. Although appellant had been a good housekeeper prior to her taking on additional work, the housekeeping had deteriorated severely. Some witnesses did not feel that Nicole was mature enough to baby sit full-time and questioned her supervision of William. A compensating factor was that Nicole's grandmother lived across the street and there were friends or relatives in the immediate vicinity. However, Nicole, the twelve-year-old, was a smoker as were the other two occupants of the duplex.
The trial court found defendant not guilty of involuntary manslaughter but guilty of endangering children stating:
 What is relevant and what I do find is that a five-year-old boy, the natural son of the defendant the defendant is sole guardian and legal custodian lost his life in a horrific tragedy. What I also find is that the State has failed to prove beyond a reasonable doubt how the fire actually started. There's a natural desire to hold one accountable for the loss of an innocent child's life. However, the law provides the State must prove that act was indeed criminal, and must prove it beyond a reasonable doubt.
 Before I can address Count One, which is the involuntary manslaughter charge, I must address Count Two, the endangering charge; for, if the defendant is found not guilty of Count Two, she cannot, under the State's theory, be found guilty of Count One.
 I find that the defendant had ample notice of William's fixation with fire; that you neglected to correct that problem by attending the fire starter classes with him; that your 12-year-old half sister was neither mature nor responsible enough to be in loco parentis for William; that it is incredibly reckless for you to smoke and/or allow your boyfriend and/or your 12-year-old baby-sitter to smoke in your home, when you knew that William had a history of starting fires.
 I also found that it was irresponsible to leave for the store, knowing that your baby-sitter was not home, telling your son who was clear up on the corner of Cleveland Avenue and you're right, I did go out to the scene, I saw how far it was from the residence to Cleveland Avenue, and that is a substantial distance for a five-year-old telling your son clear up on the street, on Cleveland Avenue to go home and check in, which he did, only to find that there was no adult or any supervision present. I do find that you created a substantial risk to the safety of your child by violating your duty of care of protecting him. I thus find you guilty of endangering children, in violation of Section 2919.22 (A), and under subsection E (1) (c) [sic] that is a felony of the third degree.
 However, I do not find that the State has proved beyond a reasonable doubt that child endangering was the proximate cause of William's death, insofar as the State has failed to prove beyond a reasonable doubt that cause of the fire. The State has failed to prove that the defendant's unlawful acts set in motion a sequence of events leading to William's death. I do not find that your acts constituted foreseeability under the statute, and as such I must find you not guilty of Count One, the involuntary manslaughter. [Tr. 738-741.]
In order to determine whether the foregoing facts are sufficient to constitute proof beyond a reasonable doubt of felony child endangering, we must examine the elements of that offense.
The elements of felony endangering children under the provisions of R.C. 2919.22(A) and (E)(2)(c) are as follows: (1) being a parent or person with custody or control of a child under eighteen years of age; (2) create a substantial risk to the health or safety of the child; (3) by recklessly violating a duty of care, protection or support; and (4) commission of the offense results in serious physical harm to the child.
R.C. 2901.01(A)(8) defines "Substantial risk" to mean "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Additionally, to obtain a conviction, the state must prove, beyond a reasonable doubt, that the accused acted recklessly. State v. McGee (1997), 79 Ohio St.3d 193. "A person acts recklessly when, with heedless indifference to the consequences, he [or she] perversely disregards a known risk that his [or her] conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).
The key elements in this case are whether appellant created a substantial risk to the health or safety of her child by recklessly violating a duty of care, protection or support. There is no doubt that she was a parent with custody and control of her five-year-old child and that, if the fire resulted from recklessly violating a duty of care and protection to the child, that it resulted in serious physical harm, i.e., death to the child.
It was not necessary that the state establish the exact cause of the fire in order to prove child endangering, but only that appellant's failure to provide adequate protection for her child was reckless and created a strong possibility that serious harm would occur as a result. Considering the evidence most favorable to the state, there was sufficient proof of child endangering which caused the child's death. A reasonable trier of fact could find that the human agency was the child and the source of the fire was a cigarette incendiary or other device or object which had come into possession of the child to be used to start the fire. The substantial risk was created by setting in motion the series of events which led to the serious harm which, according to the prosecution's evidence, was neglecting to obtain sufficient professional help to alleviate or eliminate the child's fascination with fire. Additional factors were the presence of smoking and lighters in the house which may have been a source of the fire or the object of continued fascination by the child with fire, the inadequate supervision of the child by failure to obtain a more responsible babysitter or failing to see that there was supervision of the child when he arrived home. We find that the evidence was sufficient for the court to find a violation of the felony endangering child statute.
However, there is a problem with the trial court finding appellant guilty of felony child endangering in light of the fact that R.C.2919.22(E)(1)(C) requires the child endangering described in R.C.2919.22(A) to be the result of serious physical harm to the child. The trial court specifically found that the state had not proved beyond a reasonable doubt that child endangering was the proximate cause of William's death. Thus, the additional element required to convert the first degree misdemeanor for a violation of R.C. 2919.22(A) was lacking and the trial court found appellant guilty of only a violation of R.C.2919.22(A) which under R.C. 2919.22(E)(2)(c) is a misdemeanor of the first degree. The evidence, as noted, was sufficient to support that offense.
Therefore, we sustain appellant's third assignment of error to the extent that the trial court's judgment of felony child endangering is reversed. The trial court is instructed to revise its judgment entry to show conviction of child endangering under R.C. 2919.22(A), a lesser included offense, and to resentence appellant for violation of a first degree misdemeanor.
Appellant's fourth and fifth assignments of error are overruled.
Appellant's first and second assignments of error are combined for discussion.
Appellant argues that the trial court improperly admitted irrelevant testimony concerning her behavior after the death of her son and that the prosecutor's pursuit of these lines of questioning constitute prosecutorial misconduct requiring reversal of her conviction.
There was evidence that the neighbors collected money after the child's death prior to funeral services for him. The prosecution called Zach Trout, appellant's then boyfriend as a witness and asked him about the existence and use after William's death of a fund for his funeral and burial. The defense objected to the inquiry on the grounds that the evidence was not relevant. The court nonetheless allowed testimony that appellant used some funds to purchase clothing and to rent a hotel room. The prosecutor asked if a stretch limousine with a bar was arranged to transfer appellant to her son's funeral. The witness responded that a limousine was used but he does not know who ordered it and that the bar was empty. He also explained that the limousine was not just for appellant but several people rode to the funeral in that vehicle.
The prosecutor also inquired about a "yard party" following the funeral at the home of appellant's grandmother who lived across the street from the location of the fatal fire. The witness refused to characterize the gathering as a party, stating that it was more like a picnic "for everyone to come together * * * just saying prayers for Will." The prosecutor also attempted to note that appellant purchased or was in possession of a large number of newspapers with her picture on the front page. The witness stated that he did not know anything about that but through another witness without objection it was observed that appellant had a large stack of newspapers dated July 6, 2000, with her picture on the front page. During defense counsel's direct examination, appellant's mother explained that a friend of appellant arranged for the limousine and that a number of family members and friends rode in the limousine. She also related that people returned to her house after the funeral where they ate food donated by her former employers and labor union as well as friends and neighbors. She described the gathering as what people usually do after the funeral of a loved one. She explained that neighbors solicited the money donations and that the family did not ask them to do so.
In short, this testimony was quite limited and an explanation that was provided; there was no prejudice to appellant. Obviously from the tenor of the trial court's remarks and conduct of the trial, this evidence was disregarded and had no effect on the decision made by the trial court.
We do agree, however, that the evidence was not relevant. Apparently it was brought in by the prosecution to attempt to show that appellant's son was a nuisance to her and that she did not regret his death. The entire evidence refutes this theory that was apparently triggered by testimony of a next door neighbor who was not friendly with appellant. While the trial court should have sustained an objection to the testimony based on relevancy, there was no harm. The prosecution argues that it was to refute a statement in another witnesses' testimony that appellant deeply loved and grieved for her son. We do not find it relevant for that purpose. People grieve in different ways and conduct funerals and post-funeral gatherings in different ways. The trial court noted that this was not the issue in the case and, as stated before, limited the testimony for the most part and rejected whatever was adduced.
Even if the evidence had enough limited relevance to survive a challenge under Evid.R. 401, it still failed to satisfy the test of Evid.R. 403(A) which states that relevant evidence is not admissible if its probative value is substantially outweighed by a danger of unfair prejudice.
The trial court noted in sentencing appellant that the child was the center of her life and she had suffered severely because of his tragic death. Given the presumption that the trial court considers only credible and admissible testimony, we find no reversible prejudice.
Appellant also asks that we find prosecutorial misconduct in connection with the solicitation of such evidence. Although the prosecutor may have gone further than he should, probably it was not misconduct in that one witness did state that appellant had blurted out at one time that she wished her son was dead. Her testimony was completely refuted by substantial other testimony, all of which tended to support the proposition that appellant loved her child as was found by the trial court. Also as we have previously discussed, there was no harm to appellant by introduction of this testimony which seemed to irritate the trial court rather than assist the state's cause.
Appellant's first and second assignments of error are overruled.
Appellant's first, second, fourth and fifth assignments of error are overruled. Appellant's third assignment of error is sustained. The judgment of the trial court is reversed, and this case is remanded to the trial court to enter a judgment of guilty of child endangering under R.C. 2919.22(A), and to resentence appellant for violation of a first degree misdemeanor.
Judgment reversed and remanded.
TYACK, P.J., and BOWMAN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.